IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| STEVEN BENNETT,<br><br>  Plaintiff,<br><br>v.<br><br>PROGRESSIVE SPECIALTY<br>INSURANCE COMPANY,<br><br>  Defendant.<br><br>PROGRESSIVE SPECIALTY<br>INSURANCE COMPANY,<br><br>  Third-Party Plaintiff,<br><br>v.<br><br>LG TRUCKING, LLC, and GRADY<br>HOLMES, SR.,<br><br>  Third-Party Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) CASE NO. 2:20-CV-987-WKW<br>)      [WO]<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the court is Progressive Specialty Insurance Company's ("Progressive") motion to dismiss, (Doc. # 15), which the court has construed as a motion for judgment on the pleadings, (Doc. # 16), and which Progressive has subsequently amended, (Doc. # 17). Also before the court is Progressive's motion for entry of default against the third-party defendants (Doc. # 32) and motion for

summary judgment. (Doc. # 40.) For the reasons stated below, Progressive's motion for judgment on the pleadings, (Docs. # 15, 17), is due to be granted, and Progressive's other motions, (Docs. # 32, 40), are due to be denied as moot.

## I. JURISDICTION AND VENUE

Under 28 U.S.C. § 1332, subject matter jurisdiction is proper over Bennett's claim against Progressive, as Bennett is a citizen of Arkansas; Progressive is an Ohio corporation with its principal place of business in Ohio; and the amount in controversy is greater than seventy-five thousand dollars. (Doc. # 1 at 1.) Subject matter jurisdiction over Progressive's counterclaim is proper under 28 U.S.C. § 1332 for the same reasons, and it is additionally proper under 28 U.S.C. § 1367 as it is so related to Bennett's claim as to form part of the same case or controversy. (Doc. # 30.) Subject matter jurisdiction over Progressive's claims against LG Trucking, LLC, and Grady Holmes, Sr., is proper under 28 U.S.C. § 1332, as Progressive is an Ohio corporation with its principal place of business in Ohio; LG Trucking is an Alabama limited liability company whose sole member resides in Alabama; Grady Holmes, Sr., is a citizen of Alabama; and the amount in controversy is greater than seventy-five thousand dollars. (Doc. # 27 at 2.) Subject matter jurisdiction over the third-party claims is additionally proper under 28 U.S.C. § 1367, as they are so related to Bennett's claim as to form part of the same case or controversy. The parties do not contest personal jurisdiction or venue.

## II.  STANDARD OF REVIEW

When evaluating a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the court uses standards similar to those used under Rule 12(b)(6).  The court must review the pleadings and all materials incorporated by reference.  *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).  "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts."  *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).  At the Rule 12(c) stage, the court "accept[s] the facts in the complaint as true and . . . view[s] them in the light most favorable to the nonmoving party."  *Id.*

Facts can be judicially noticed, and therefore available for consideration in deciding a Rule 12(c) motion, if they are "generally known within the trial court's territorial jurisdiction" or if they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Taking judicial notice of filings and orders in a previous action is authorized, *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1279 (11th Cir. 1999), especially for determining the preclusive effect of the prior case.  *See Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010).

## III. BACKGROUND

On June 25, 2018, Plaintiff Steven Bennett was driving a pickup truck northbound on Highway 165 in Russell County, Alabama. In the opposite lane of Highway 165—a two-lane highway—Robert Atkin was driving a tractor-trailer southbound, when a car ahead of him in the southbound lane stopped to yield to oncoming traffic. Atkin, allegedly because of his failure to keep a proper lookout, did not immediately see the stopped car ahead of him. When Atkin eventually saw the vehicle, he aggressively applied his brakes, causing the momentum of his trailer to push the trailer past the tractor, essentially folding the tractor-trailer at its pivot point. This "jackknifing" of the tractor-trailer forced the tractor into the northbound lane. The tractor collided with Bennett's pickup truck, shattering his left arm. (Doc. # 1 at 2.)

Atkin was an employee of LG Trucking, LLC, and Grady Holmes, Sr. Grady Holmes, Sr., was engaged in the trucking business under the name Holmes Transport. (Doc. # 1 at 2.) Before the accident, Holmes Transport acquired insurance for an unrelated tractor and trailer from Defendant, Progressive Specialty Insurance Company ("Progressive"). Holmes Transport later altered to policy to cover a different tractor, also not involved in this incident, and to add LG Trucking, LLC, as an additional insured party. At the time of the accident, the tractor operated by Atkin was not listed on any policy issued by Progressive. (Doc. # 1 at 3.)

On August 16, 2018, Bennett filed a lawsuit in the Circuit Court of Russell County, Alabama, bringing state claims of negligence and wantonness against LG Trucking, LLC, and Grady Holmes, Sr.  (Doc. # 1 at 3–4.)

While the state court action was pending, Progressive filed suit in this court, seeking a declaration as to whether the insurance policies provided coverage for the crash.  (Doc. # 1 at 4; Doc. # 1 in Case No. 3:18-CV-775-ECM.)  Specifically, Progressive's prior action asked for "a declaration as to whether there is *any* defense or indemnity duties in the action pending in state court" and asked for "specific rulings and findings as to whether Progressive owes *any* duty or obligations or responsibilities to pay damages or any part of a judgment which may be rendered in [the state court case]."  (Doc. # 1 in Case No. 3:18-CV-775-ECM at 7–8 (emphasis added).)  Bennett answered the complaint, asserting the following as an affirmative defense:

> 1.     Defendant Bennett pleads he is entitled to the benefits of Defendant LG Trucking, LLC's MCS-90 endorsement which attaches to [the contested insurance policies].
>
> 2.     The MCS-90 endorsement issued by Petitioner Progressive insures that Petitioner Progressive agrees to pay with the limits of liability described within [the contested insurance policies] any final judgment recovered against Defendant LG Trucking, LLC or any of its insured, resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of §§ 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy.

5

>3. The MCS-90 applies to motor carriers of property who satisfy their financial responsibility requirements prescribed under Title 49 § 387.7 of the CFR.

(Doc. # 11 in Case No. 3:18-CV-775-ECM at 2–3.)

In fact, Progressive had never issued an MCS-90 endorsement on the contested policies prior to the accident. Progressive did not issue an MCS-90 endorsement until roughly a month after Bennett filed his answer. (Doc. # 1 at 3.) Bennett received notice of these facts in discovery in the first federal case.

In the prior case, Progressive moved for summary judgment, noting that the contested policies did not provide liability insurance, did not list Atkin as a rated driver, and did not cover the involved tractor. (Doc. # 25 in Case No. 3:18-CV-775-ECM.) Although Progressive never mentioned the MCS-90, the motion sought summary judgment "on all claims asserted by Progressive in its Declaratory Judgment Complaint." (Doc. # 25 in Case No. 3:18-CV-775-ECM at 21.) Bennett's one line response conceded the motion: "Respondent Steven Bennett agrees the petitioner's Motion for Summary Judgment is due to be granted." (Doc. # 29 in Case No. 3:18-CV-775-ECM.) The court found that Progressive's arguments in favor of summary judgment were meritorious and granted summary judgment, noting that "neither the subject vehicle nor ther driver were covered by any of the potentially relevant insurance policies." (Doc. # 32 in Case No. 3:18-CV-775-ECM at 4.) Final judgment in favor of Progressive was entered on November 22, 2019. (Doc. # 33 in

Case No. 3:18-CV-775-ECM.) Bennett did not appeal the judgment or file any motion for relief from the judgment.

On October 29, 2020, the underlying state court case was tried as to damages, and judgment was entered in favor of Bennett and against LG Trucking, LLC, and Grady Holmes, Sr., in the amount of $929,556.00. (Doc. # 1 at 4.) Bennett then brought the present suit in this court on December 2, 2020, seeking full satisfaction of the judgment from Progressive. (Doc. # 1 at 4–6.)

Progressive answered the complaint on January 13, 2021, and subsequently moved to dismiss the complaint. (Doc. # 7; Doc. # 15.) Because a motion to dismiss was procedurally improper, the court construed the motion as a motion for judgment on the pleadings. (Doc. # 16.) Progressive thereafter filed an amended motion for judgment on the pleadings, (Doc. # 17), Bennett filed a response, (Doc. # 21), and Progressive filed a reply, (Doc. # 23).

On July 1, 2021, Progressive, with leave of the court, filed a third-party complaint against LG Trucking, LLC, and Grady Holmes, Sr., asserting that Progressive is entitled to indemnification from LG Trucking, LLC, and Grady Holmes, Sr., if a judgment is entered against Progressive in this action. (Doc. # 27 at 8–9.) On July 6, 2021, Progressive, with leave of the court, filed an amended answer, adding a counterclaim for declaratory judgment against Bennett. (Doc. # 30

7

at 9–12.) Service of process on the third-party defendants was completed on July 9, 2021, but they have never entered an appearance in this court. (Doc. # 31.)

## IV.  DISCUSSION

This action reunites parties who met years ago in this same court to answer the same question:  Is Progressive obligated to pay any part of the state court judgment against LG Trucking, LLC, and Grady Holmes, Sr.?  Progressive argues that this second case is barred by *res judicata*. (Doc. # 17 at 1.)  Bennett argues that the first case never decided the particular claim that he now raises. (Doc. # 21 at 3–4.)  But no matter whether his argument was addressed or not, the time to raise new arguments has passed and preclusion has attached.  In the words of Shakespeare, "the hurly-burly's done, . . . the battle's lost and won."  William Shakespeare, Macbeth act 1, sc. 1, l. 3–4.

**A.  *Res Judicata***

In the American system of jurisprudence "the usual rule is that merits of a legal claim once decided in a court of competent jurisdiction are not subject to redetermination in another forum." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 485 (1982).  According to the doctrine of *res judicata*—also known as "claim preclusion"—a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).  Once a

final judgment has been entered in a court of competent jurisdiction, the parties are precluded from relitigating claims that were raised and could have been raised in that action. *Long v. Sec'y, Dep't of Corrs.*, 924 F.3d 1171, 1178 (11th Cir. 2019); *Likes v. DHL Express (USA), Inc.*, 787 F.3d 1096, 1099 n.4 (11th Cir. 2015); *Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306, 1308 (11th Cir. 2006).

*Res judicata* is a judicially crafted doctrine "with the purpose of both giving finality to parties who have already litigated a claim and promoting judicial economy . . . ." *Eastman Kodak Co. v. Atlanta Retail, Inc.*, 456 F.3d 1277, 1284 (11th Cir. 2006). An unfettered ability to relitigate the same claims would increase the likelihood of courts rendering inconsistent judgments, which would inhibit the creation of clear precedents upon which the common-law system is founded. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008); *Montana v. United States*, 440 U.S. 147, 153-54 (1979); *Borrero v. United Healthcare of New York, Inc.*, 610 F.3d 1296, 1307 (11th Cir. 2010). The rule of law requires consistency in judicial decisions, and *res judicata* helps create such consistency, thereby avoiding confusion and encouraging parties to rely on judicial decisions. *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

The doctrine of *res judicata* conserves judicial resources as well as the temporal and financial resources of the parties. *Allen*, 449 U.S. at 94; *Montana*, 440 U.S. at 153–54; *Borrero*, 610 F.3d at 1307. Once a case has been decided, it would be unfair to give the losing party multiple opportunities to relitigate the same claim,

needlessly burdening the prevailing party and the courts. *Parklane Hosiery Co. Inc. v. Shore*, 439 U.S. 322, 326 (1979). "Without the principles of res judicata, a wealthy party could repeatedly relitigate a [claim] until the opposing party wearied of the fray, became impoverished, or both." *Greiner v. De Capri*, 403 F. Supp. 3d 1207, 1222 (N.D. Fla. 2019) (providing an excellent statement of the principles of *res judicata* heavily borrowed herein).

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor*, 553 U.S. at 891. "In the Eleventh Circuit, a party seeking to invoke the doctrine of res judicata must establish its propriety by satisfying four initial elements: (1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action." *Mann v. Palmer*, 713 F.3d 1306, 1311 (11th Cir. 2013) (quoting *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001)). "Cause of action" is defined broadly under Eleventh Circuit law: "[I]f a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata." *Id.* (quoting *In re Piper Aircraft*, 244 F.3d at 1297).

If "the claim in the new suit was or could have been raised in the prior action . . . , res judicata applies." *Id.* (quoting *In re Piper Aircraft*, 244 F.3d at 1296.)[1]

Bennett tacitly concedes that the parties to this case are identical to the prior case and that this court was a court of competent jurisdiction to consider his claims. However, Bennett argues that the MCS-90 endorsement claim was never decided in the first case and that the MCS-90 claim was not ripe for adjudication in the prior suit. Understanding this argument necessitates some understanding of the MCS-90.

## B.   The MCS-90 Endorsement

The MCS-90 is a product of the Motor Carrier Act of 1980. *See* 49 U.S.C. § 13101 *et seq.* Congress passed the Motor Carrier Act "to address abuses that had arisen in the interstate trucking industry which threatened public safety, including the use by motor carriers of leased or borrowed vehicles to avoid financial responsibility for accidents that occurred while goods were being transported in interstate commerce." *Canal Ins. Co. v. Distribution Servs., Inc.*, 320 F.3d 488, 489 (4th Cir. 2003).

Pursuant to the Motor Carrier Act, the Department of Transportation requires certain motor carriers to obtain an insurance policy containing an MCS-90 endorsement "providing that the insurer will pay within policy limits any judgment

---

[1] *Res judicata* is often conflated with the related doctrine of collateral estoppel—also called "issue preclusion." In this order, only preclusion of "claims" or "causes of actions" is discussed.

11

recovered against the insured motor carrier for liability resulting from the carrier's negligence." *Waters v. Miller*, 564 F.3d 1355, 1357 (11th Cir. 2009) (quoting *Illinois Cent. R. Co. v. Dupont*, 326 F.3d 665, 666 (5th Cir. 2003)) (alteration adopted). "Basically, the MCS-90 makes the insurer liable to third parties for any liability resulting from the negligent use of any motor vehicle by the insured, even if the vehicle is not covered under the insurance policy." *T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc.*, 242 F.3d 667, 671 (5th Cir. 2001).

Although the insurance policies at issue here did not have an MCS-90 endorsement at the time of the crash, Bennett argues that an endorsement was required under federal regulations and therefore ought to be read into the policies.

## C.     Application of Preclusion Principles

Bennett raises two primary arguments against preclusion.  First, he argues that the first action only addressed two narrow issues:  "(1) Whether the subject truck was an insured vehicle under either policy; and (2) Whether driver Robert Atkin was an insured under either policy when he was not listed as a 'rated driver.'"  (Doc. # 21 at 3.)  Because, in Bennett's view, the case did not address the applicability of an MCS-90 endorsement, he argues that there has been no final judgment on the merits of *his* claim.

Second, Bennett argues that his claim was not ripe at the time of the first judgment.  An injured party can demand payment from the insurance company under

the MCS-90 "when the underlying insurance policy does not provide coverage and either (1) no other insurance policy is available to satisfy the judgment against the motor carrier, or (2) the motor carrier's insurance coverage is insufficient to meet the federally-mandated minimum level." *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 884 (10th Cir. 2009) (emphasis removed). Because he did not meet the prerequisites for demanding payment under the MCS-90 at the time of the prior judgment, Bennett contends that the applicability of the MCS-90 could not have been litigated in the first case. (Doc. # 21 at 8. ("Therefore, in this case, two orders were *necessary* for Bennett's demand for payment pursuant to the MCS-90 endorsement to ripen. First, a court needed to rule that the insurance policy did not cover the wreck. Judge Marks did this in Progressive's first declaratory judgment action. Second, a court needed to enter a judgment against the Defendant motor carriers in favor of Bennett. When this occurred on October 29, 2020, Bennett could finally pursue the MCS-90 endorsement claim.").)

Bennett's first argument fails for multiple reasons. First, the judgment in the first case was far broader than the two narrow issues identified by Bennett. Progressive's complaint sought "specific rulings and findings as to whether Progressive owes *any duty* or obligations or responsibilities *to pay damages or any part of a judgment which may be rendered* in [the state court case]." (Doc. # 1 in Case No. 3:18-CV-775-ECM at 7–8 (emphasis added).) Progressive did not simply

13

ask whether Atkin was a covered driver and whether the vehicle was a covered vehicle. Progressive sought a declaration that would put the whole incident behind it. Progressive's motion sought summary judgment "on all claims asserted by Progressive in its Declaratory Judgment Complaint," (Doc. # 25 in Case No. 3:18-CV-775-ECM at 21), and that is exactly the relief that was granted.

Even if the MCS-90 had to be specially invoked in order for preclusion to attach, Bennett *did invoke* the MCS-90. In his answer, Bennett clearly pled MCS-90 coverage. Preclusion does, of course, require a "final judgment on the merits," *Mann*, 713 F.3d at 1311, but that does not mean that the claim has to be fully briefed and discussed in the court's opinion. The "final judgment on the merits" element is simply a safeguard against the accidental attachment of preclusion when a case is dismissed without prejudice on technical grounds. *See Solis v. Glob. Acceptance Credit Co., L.P.*, 601 F. App'x 767, 770 (11th Cir. 2015). So long as the ruling is of the kind which turns on the substance of the action—such as a dismissal for failure to state a claim or a summary judgment—then the element is satisfied. Anything pending on the periphery of the action is subsumed into the final ruling. In *Greiner v. De Capri*, for example, a husband filed a counterclaim in a divorce proceeding asserting a claim for breach of contract against his wife. 403 F. Supp. 3d at 1214. After the filing of the counterclaim, there was no further discussion of the breach in the record, and the court did not award any relief to the husband based on the breach.

*Id.* Nonetheless, the final judgment entered in the divorce action counted as an adjudication on the merits. *Id.* at 1224 & n.6 ("Nothing in the phrase 'adjudicated on the merits' requires the state court to have explained its reasoning process." (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001)).

But mentioning the MCS-90 in the answer was not necessary for preclusion to attach. For federal judgments, *res judicata* covers not only the litigated claims, but also the claims that "could have been raised in the prior action." *Mann*, 713 F.3d at 1311. And, contrary to Bennett's second argument, the MCS-90 claim could have been litigated in the first case.

Bennett's argument that he could not have recovered anything under the MCS-90 at the time of the first judgment misses the mark. A declaratory judgment action tests the insurance carrier's potential liability without regard for how the underlying action will later resolve or whether any money will eventually be awarded pursuant to the declaration. The applicability of an MCS-90 endorsement can and has been tested prior to the rendering of a judgment in the underlying action. *See, e.g.*, *Nat'l Specialty Ins. Co. v. ABS Freight Transp., Inc.*, 91 F. Supp. 3d 1258, 1264 (S.D. Fla. 2014), *aff'd sub nom. Nat'l Specialty Ins. Co. v. Martin-Vegue*, 644 F. App'x 900 (11th Cir. 2016).

This case arises out of the same nucleus of operative fact as the first case. When faced with Progressive's action for declaratory judgment, Bennett was

required to raise his MCS-90 argument in order to recover under that theory. *See* Fed. R. Civ. P. 13(a)(1) (requiring defendants to raise claims that "arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim"). Because he did not, his claim is precluded under the doctrine of *res judicata*.[2] When it is apparent from the face of the complaint and from judicially-noticeable facts that all claims are precluded, a judgment on the pleadings under Rule 12(c) is appropriate.

## V. CONCLUSION

For the reasons stated above, it is ORDERED that Progressive's motion for judgment on the pleadings (Doc. # 15; Doc. # 17) is GRANTED. Bennett's claim against Progressive is DISMISSED with prejudice; Progressive's counterclaim against Bennett is DISMISSED with prejudice; and Progressive's claims against the third-party defendants are DISMISSED as moot. Progressive's remaining motions (Docs. # 32, 40) are DENIED as moot.

A final judgment will be entered separately.

DONE this 10th day of February, 2022.

/s/ W. Keith Watkins  
UNITED STATES DISTRICT JUDGE

---

[2] The reverse is also true: Progressive's counterclaim is precluded because it was or should have been raised in the prior action. All claims in the transaction or occurrence are said to have "merged" into a final judgment in favor of a plaintiff, thereby precluding serial litigation on the same topic. *See Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1595 (2020).